### In re WATTS.
### Patent Appeal No. 2976.

Court of Customs and Patent Appeals.
June 6, 1932.

GRAHAM, Presiding Judge, and BLAND, Associate Judge, dissenting.

Charles E. Tullar, of Schenectady, N. Y. (Fairfax Bayard, of Schenectady, N. Y., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Several claims of appellant's application relating to alleged improvements in electrical terminal cords were allowed by the Examiner of the United States Patent Office, but claims 9, 34, and 35 were rejected upon the sole ground that they were anticipated by disclosure in the drawings of a patent to Walter A. Frantz, No. 1,611,014, issued December

14, 1926. The decision of the Examiner being affirmed by the Board of Appeals, the pending appeal to this court was taken.

The appealed claims read as follows:

"9. In a device of the class described, an electrical cord, a contact secured to a conductor of the cord, a loop in the conductor adjacent the contact, and a body of insulating material embedding the contact and looped portion of the conductor."

"34. A cord terminal of the bayonet type comprising an electrical cord, a pair of strip contact members electrically connected to conductors of said cord, and a body of resilient insulating material embedding corresponding portions of said members and the adjacent end portions of the cord, said body permitting relative movement between said contacts and deformation of the body, and loops formed in the conductors adjacent their connection to each contact member whereby the connection between the conductor and contact members will not be injured by such relative movement or deformation.

"35. In a cord terminal, plurality of metallic contact members, a cord having a plurality of electrical conductors, the end portions of said conductors being turned back from the end of the cord and electrically connected to said contact members, and a body of resilient insulating material embedding said contact members and the adjacent end portions of said cord."

It will be noted that in both claims 9 and 34 an element, as expressed in claim 9, is "a loop in the conductor adjacent the contact." In claim 35 an element is "the end portions of said conductors being turned back from the end of the cord and electrically connected to said contact members."

It seems to have been the view of the tribunals of the Patent Office that the language quoted, supra, from claim 35 defines the loop element specifically mentioned as such in the other two claims, and the brief of the solicitor for the Patent Office agrees with the statement of appellant's brief, saying: "These loops in the conductors of the cord adjacent the points of connection between the conductors and the contacts constitute the principal distinguishing feature of the invention defined in the three appealed claims."

It seems to us, however, that there is a distinction between claims 9 and 34 on the one hand and claim 35 on the other, as will be later pointed out. Nos. 9 and 34 will be first considered.

There was no suggestion in either the decision of the Examiner or that of the Board

of Appeals that the loop element was not patentable per se and the rejection, as stated, was based solely upon the alleged anticipation in the Frantz drawings.

In appellant's structure there is shown an electrical cord containing two wires, or conductors, each individually insulated, the two being bound together by an additional insulating coating to form the electrical cord of which they are parts. The ends of these wires, or conductors, are bent back upon themselves so as to form complete loops. The loops in the conducting wires are adjacent to the contact points, but do not themselves touch these points, or form any part of the contact.

In one figure of the Frantz drawings there is shown an arrangement wherein the bared ends of conducting wires are bent through holes in the contact members at the very point of connection. As bent they are somewhat looped and at the looped point themselves form part of the connection. Back of the bared ends so bent into holes, the insulated portions of the wires are slightly curved. As we understand the case, it is this slightly curved portion of the insulated part of the wire (and not the bent bared end) which the tribunals of the Patent Office held to be anticipatory of "a loop in the conductor *adjacent* the contact." (Italics ours.)

There is no reference in either the specification or claims of Frantz to either the bent, or looped, bared ends which actually contact in looping, or to the slight curve in the insulated portion of the wire. No function was ascribed to either of these features disclosed in the drawings.

It is argued by the solicitor for the Patent Office that it is immaterial that the patent "ascribes no function to the curves," and that "description for the purposes of anticipation can be by drawings alone as well as by words."

This rule of law is so well known as to require no citation of authority to support it, but like all rules it must be applied with proper limitations.

In the case at bar the drawings of Frantz do disclose noninsulated wire ends bent in a manner which probably causes the form resulting to meet the common meaning of loop, but there is no claim that these appear in such a relation to the device as to lead to the conclusion that their purpose in Frantz was the same as the purpose of the loops in the insulated portions of appellant's conductors. As stated, these particular formations were not the formations held to be anticipatory of

claims 9 and 34 by the Patent Office tribunals. They relied upon the slight curves heretofore discussed for anticipation.

We are unable to agree with those tribunals that these slight curves should be taken as anticipatory of appellant's loops. Basing our deductions alone upon the drawings in Frantz, as we must, since the specifications shed no light upon the matter, we do not feel that the slight curves of Frantz can perform the same function in all respects as the loops of appellant.

Since the claims at issue were rejected solely upon the ground of anticipation, as heretofore stated, and since we do not think the Frantz drawings do, in fact, anticipate claims 9 and 34, we are of opinion said claims should be allowed.

As to claim 35, however, the element quoted, supra, has no limitation of a loop *adjacent* the contact. As worded, it is a broader claim than the others, calling for turned ends electrically connected to the contact members. We are unable to distinguish in the language itself anything not readable upon the bent or looped wire ends of the Frantz drawings. Accordingly, we agree that this claim should not be allowed over the reference.

The decision of the Board of Appeals is modified, being reversed as to claims 9 and 34 and affirmed as to claim 35.

Modified.

GRAHAM, Presiding Judge (dissenting.)

I am in agreement with the majority opinion as to claim 35. I cannot, however, concur as to claims 9 and 34, which I think were properly rejected by the Board of Appeals upon the Frantz reference, No. 1,611,014.

Frantz shows three forms of his device. The underlying idea in the three forms of the Frantz terminal and in the application of appellant here is to provide a flexible terminal in which the connection between the electric conductors and the contacting terminal elements will be protected against strain and breakage when the terminal is flexed. This is done, both by the patentee Frantz, and by the appellant, by means of providing a loop in each conductor adjacent to the point of contact between it and the contacting element.

It is not claimed there is anything else in claims 9 and 34 which is patentable except this one feature.

The opinion of the majority is to the effect that Frantz shows no such loop. Let us disregard two alternative forms of Frantz' figures, and take but one for example, illustrated by Frantz' figures 1 and 2. Here the contacting terminals of the bayonet type are bent inward at the end inclosed in the rubber envelope. The conductor wire is curved outward and then inward through a hole in this end of the contacting element. Then this conductor wire is looped to the extent of perhaps two-thirds of the circumference of a circle and the end of this loop and conductor then makes contact with the contact terminal by means of the pinching of a tongue in asid terminal down upon and against the end of the conductor. The holes in the contacting terminals through which the conductors pass are, as stated in the specification, for "increasing the security of contact and holding the parts in line." In figure 6 of the drawings, these guide holes are entirely omitted.

It will thus be seen that Frantz shows, not only one, but two loops in his conductor, and thus fully satisfies the language in claim 9: "A loop in the conductor adjacent the contact," and in claim 34: "Loops formed in the conductors adjacent their connection to each contact member."

Claim 34 further recites, as to these loops: "Whereby the connection between the conductor and contact members will not be injured by such relative movement or deformation." There can be no doubt that this feature is present in Frantz, and it is equally certain that the loop shown by Frantz will perform exactly the same functions as those of applicant.

It is argued that Frantz' disclosure does not show a loop, but merely a curve. A loop is thus described by Webster's New International Dictionary, 1932:

"1. A fold or doubling of a thread, cord, rope, etc., through which another thread, cord, etc., can be passed, or into which a hook can be hooked; sometimes, a fold of cord or ribbon serving as an ornament, as on a uniform. Hence, a ring or fold forming a catch, often one of metal or wood; an eye, staple, noose, bight, or the like.

"2. A loop-shaped figure, course, bend, or the like."

The curved conductors shown by Frantz clearly come within this definition of a "loop."

In my opinion the decision of the Board of Appeals should be affirmed.

BLAND, Associate Judge (dissenting).

If I understand the position of the majority, it is that the curves in the Frantz reference, which necessarily serve the purpose of relieving the tension, do not anticipate

844

the loops of the applicant which serve the same purpose. A curve might not respond to the term "loop" if this were an interference proceeding and Frantz was trying to make one of the applicant's "loop" claims. But this is not an interference proceeding, and the only question is, having seen Frantz, is it invention for one skilled in the art to make a loop to take care of the tension, rather than the curve? It seems to be the view of the majority that the Patent Office should have stated that there was no invention in modifying Frantz in the manner in which the applicant did. The Board did enough to satisfy me by showing the state of the art by citing the Frantz and other references.

I am not willing to further extend the doctrine laid down in Re Tucker et al., 54 F. (2d) 815, 19 C. C. P. A. ——. To do so is to circumscribe the duties of this court to such an extent as to render appeals to it purposeless in ex parte cases of this character.